Your Honor, it's a clear case that we're going to call 2-09-85 in the Marriage of Adams. On behalf of the appellant, Mrs. Carolyn Janssens. On behalf of the appellee, Mr. Gregory Maximoff. Good morning, Counsel. Mrs. Janssens? Thank you, Your Honor. May it please the Court, Counsel. My name is Carolyn Janssens of the Dreadnought Janssens Law Group and I represent the appellant, Cindy Adams. This case is based on an appeal of the trial court's ruling in Cindy Adams' petition to set an arrearage which was based on a July 1990 order abating child support. Cindy Adams argued that the child support was only abated for a period of six months pursuant to Supreme Court Rule 296F and that thereafter the child support continued to accrue until the child reached the age of majority. Cindy asked the trial court to set an arrearage of $51 per week plus interest based on the amount of the support order that was in effect prior to the abatement. David Adams argued that the Supreme Court Rule 296F did not apply or alternatively should not be applied to him. The trial court denied the motion and held that granting the motion to set an arrearage based on that support order would, I'm sorry, based on the 1990 order would result in a gross inequity to David Adams. I believe that there are three issues in the appeal. The first being, does Supreme Court Rule 296F apply? The second being, if so, are there any equitable principles that apply to this case? And if not, if Supreme Court Rule 296F does not apply, whether or not Cindy Adams is entitled to any relief based on David Adams' failure to notify her or the court of future employment. I think the main argument that the court would want to hear argument on is the applicability of Supreme Court Rule 296F. And I think it's important to look at the history of the case law and the rule itself. Isn't it clear that King County never adopted the rule? Yes, that is correct. As a matter of fact, my review, my discussion with the Supreme Court clerk indicated there were only about four counties that ever adopted Supreme Court Rule 296F. And they were primarily down in the 4th District. What's the primary case you rely on to apply the rule in your case? The primary case would probably be in Ray the Marriage of Horn, which is a 4th District court case. And there's a line of cases surrounding it where the 4th District, who had the most, they had the largest split because some of their circuits had adopted it and some of them had not. And the 4th District court held that the existence of the Supreme Court Rule allowed the trial courts to use subsection F of the rule, regardless of whether or not the circuit clerk's office and the chief judge had applied to adopt the rule. The main provision of it is that subsection F deals solely with a petition to abate support and provides for the temporary abatement of support. Subsection N, on the other hand, specifically states that the, subsection N states that the procedures can only be used if the chief of the circuit, the chief judge of the circuit and the clerk of the circuit court apply to use them. And I would argue to this court that the reason for that is that the rule taken as a whole provides for a lot of experimental procedures at the time back in 1989 for the clerk to use to track the payment of child support, to enforce the payment of child support, all of which now has actually a function of which has been wrapped more into the State Disbursement Unit anyway. But doesn't the rule require then, though, that a petition be filed to allow this to take place? And are you not asking that it be applied, in essence, retroactively? And is there authority? I don't think Horne applied it retroactively, did they? Okay, I think there are two separate parts to your question. Yes, a petition is required to be filed and notice to be given to the obligee. But I would argue that that is not, it is a procedural requirement of a petition to abate support. However, pursuant to the Illinois Marriage and Dissolution of Marriage Act, any motion or petition relating to support would require the filing of petition and notice. Will you speak a little more slowly? I'm sorry. The Illinois Marriage and Dissolution of Marriage Act already requires anyone who is modifying support in any way, whether it's reducing it, increasing it or abating it, to file a petition and give notice to the person who pays support. Another reason why I don't think that that should apply specifically to this case is that Mr. Adams' support was temporarily abated completely. Under normal circumstances, in order to reduce or abate his support, it would be his obligation to file a petition requesting that. If he had not requested an abatement, whether it be by written petition or orally, then the order never would have been entered. So it was actually to his benefit that this agreed order was entered without the requirement for a petition and notice. They were litigating other matters and they entered into this agreed order based on his temporary layoff. So I don't think that the requirement for petition and notice should be something that is decisive in this case because of the fact that that would be required in any other case. And you can enter into an agreed order based on something that was not necessarily part of a series of petitions, and it's done routinely in divorce cases where a temporary layoff happens, you're litigating visitation, so you modify child support. It's done routinely without a specific petition. I forgot what the second part of the question was. Well, let me go on one second here. If we look at the wording of the agreed order itself, there is no provision in that agreed order that David had to report when he became employed again, is there? There is no provision in that agreed order. However, I would submit to the court that the prior orders of the court, which were including the support order and the order for withholding specifically, said that he had to report changes of employment to the circuit clerk's office within seven days. And I don't think that the entry prior orders required that. The actual order, the actual order to withhold that $51 per week from his income that was set back in, I believe it was January of 1990 and was in effect up until the date of that order said that he had to report changes of employment. Presumably that is how we found out that he was temporarily unemployed. And then after that, I don't think that entering an order abating support modifies or vacates or abates his obligation to continue to notify the clerk if he obtains different employment. Didn't the court subsequently vacate all those pre-existing orders? Did the court? Did the court. No. Quashed? What about the 12789 supplemental order be quashed? There is wording, I believe I had read that, as Justice Bowman indicated, a supplemental order dated January 27th of 89 be quashed. Oh, I'm sorry. I believe what you're referring to is there was a record, there was a record entered through the clerk's office. There is an order that states that the clerk is to purge the child support records. And I believe that that refers to the clerk's bookkeeping function as it relates to the tracking of payments. At that time, there were no payments being made because it had been abated. Therefore, there would be no need for the clerk to continue tracking payments or to take any enforcement measures for a lack of payment because the payments had been temporarily abated. So if I'm responding to what I think you're asking, I think it was in September of that year, they entered an order basically clarifying that the clerk is to do no more work because of the abatement. So I don't think it vacates the notice for withholding to the extent that there's no employer to withhold, but I don't think there's anything that relieves Mr. Adams of his obligation to report employment as was required at the time under that notice for withholding. Isn't the agreed order extremely plain? Abate for a short period of time and subject to further order of court? Your Honor, it is. I believe it is somewhat ambiguous, and I believe that the appellee's briefs in and of itself address that issue by the definition that they give to abate. And the definition that the appellee gives to abate is to cancel or otherwise lessen or diminish. Well, to me, to cancel or terminate versus less or diminish mean two different things. If something is canceled and terminated, it is done. If something is lessened or diminished, then it is lessened or diminished. And I don't think that the word abate in and of itself, I think the word abate in the rule, I'm sorry, in the order is ambiguous and needs to be interpreted. And I think the correct interpretation of that word is found in 296F, and I think that's why it's there. And the reason why I think that is that the Supreme Court committee, when they were drafting Supreme Court Rule 296F, or when they were drafting the rule, the comments make it clear that they recognize that the holding was contrary to Coons v. Wilder. And while I understand that just recognizing something as contrary is not completely overturning it, however, I would point out to the court that one of the things that the committee said is that the committee specifically quoted the language in Coons where the second district court held that we find no statutory or case authority for the trial court to temporarily abate a portion of support when the supporting parent is without means to currently pay. That was the whole name of Coons. What role do those comments play in our interpretation of the statute? I'm sorry? What role do the comments play in our interpretation of the statute? I think just to the extent that they give insight into what the intent of the committee was who drafted the rule, then I think that if we're looking at whether or not the subsection F of this rule was intended to apply, then their intent is very relevant. And I think that the intent, which is shown here, it was to provide that statutory slash case law authority that the Coons court back in 1981 thought it was lacking. So when they passed this amendment or this change or this new Supreme Court Rule 296F in 1989, they specifically quoted the section of Coons that said that that court found no authority. I think that their intent was to provide authority for a court like the second district court in Coons to hold that the abatement was appropriate. It was never accepted by King County that will disregard that rule. What's your next move? Well, I think that the reason why the counties didn't adopt the rule is because when you read the rule as a whole, it puts a lot of burden on the clerk's office. And requires the clerk and the chief judge to agree to take on these burdens. The exception to that is subparagraph F, which puts no burden on the clerk's office and no burden on the judges. All it does is provide some guidance on some negative case law that would allow the courts to interpret it in a way that I believe the committee felt made more sense. Are you arguing just contrary to what you just said about the committee counting? No, no, I'm sorry. If it sounded that way, I apologize. No, I think that the committee comments are relevant to the intent. And the intent of subparagraph F, I believe, was to provide guidance to the court that they are allowed to temporarily abate child support but that it continues to accrue contrary to what Coons v. Wilder says. Then I believe that subparagraph N, where it indicates that it has to be approved by the circuit clerk and the chief judge, was directed at the other subparagraphs of this rule which create procedural and administrative burdens on the clerk's office. And I believe that what the Supreme Court was attempting to do was to give the clerk's office an option of being part of this experimental child support collection and processing procedure. Most did not opt to do it. However, I do find it interesting that every county adopted their own system for the clerk to process those payments anyway outside of Supreme Court Rule 296. So I don't think that as far as subsection N and the fact that it says you have to adopt it, I don't think that the committee would have wanted to require a circuit court to adopt a discretionary item for a judge. This is something they were giving some direction to judges on how to use their discretion to abate child support. It doesn't make sense to me, and I don't think that it was the intent of the committee, to provide the discretion to abate support to a judge in a circuit that adopted the rest of the rule and not in other circuits. That would actually treat children and recipients of child support differently in different circuits throughout the state and different counties based on whether or not they adopted a rule that outside of that subsection has nothing to do with the litigants themselves. The intent of the legislature, if we look at the legislative intent, was to just let them sit for 13 years. The minor is no longer a minor. Is that correct? That is correct. He is of majority age. And then come back 13 or 15 years or 20 years later and file a lawsuit to get all the support that you were getting initially, and you have no record of whether the husband worked, didn't work, made a lot of money, made little money. You're asking for $34,000 based on $51 that was initially ordered to pay. Correct. Do you think that was the intent of the legislature? I think it was. You can't go back and unabate what you abated. I think it was the intent of the legislature to allow a custodial parent who received support to collect child support well into the future. Assuming that Cindy Adams is entitled to this support, there's a statute of limitations on the collection of it of 20 years. So I think that there certainly is the legislative pronouncement that 20 years is the appropriate time frame by which you have to try to collect that support. To answer the second part of your question relating to we don't know whether or not he worked, whether or not he didn't. The reason why she is asking for the $51 per week is because pursuant to Supreme Court Rule 296F, that abatement entered in July of 1990 only lasted six months, unless David Adams petitioned to extend it an additional six months. So her argument is that six months from then, the child support would have begun to accrue again pursuant to the rule at $51 a week. Now the fact that she didn't receive any increases, assuming she would be entitled to them, is a burden on her. She would have had to file a motion, come back into court, and ask for that increase. But I think there's some very good case law that specifically states that where a parent is not re-employed, it is not the custodial parent's job to keep coming back into court to see if the parent is employed. That would be a waste of money and judicial resources. That the obligation as a public policy in the state of Illinois is on the parent to report employment. And that would be People x Royal Green v. Young, which is cited in my brief. And it is also a 4th District case. Thank you, Counsel. You'll have some additional time to respond. Thank you, Your Honors. And Mr. Maxima? Good morning. May it please the Court. Good morning. I'm Greg Maxima on behalf of David Adams, the appellee from the Peskin Law Firm. In this case, the appellant filed a motion relying solely on Supreme Court Rule 296 for retroactive relief to set a child support average. Rule 296 requires a county to opt in to have the terms of this rule.   It requires what did you say? It requires a county to opt in. Oh, a county. Okay. Excuse me. To have the terms of the rule apply as set forth in subparagraph N. There's a presumption that the Supreme Court rules will apply as they're drafted. And there's no exceptions to that rule. King County did not and has not opted or followed the appropriate procedure under subparagraph N to have Rule 296 apply. Therefore, if Rule 296 does not apply to the case of Barr since it's not effective. Excuse me. Therefore, Rule 296 does not apply to the case of Barr since it is not effective in King County. As a result, we have to give the terms of the July 9, 1990 order its ordinary meaning, namely to reduce support to zero. As a result, no support accrued, no support is due, and the trial court should be affirmed. How do you answer the plaintiff's comments regarding committee comments and the fact that the rule was adopted to assist the clerk's office and not really pertain to re-abatement by the court system? The rule in and of itself, the terms of the rule do not differentiate between just applying strictly to the clerk or strictly to the court. And I think you need to take the entire terms of the rule as a whole. And as a result, if one portion of the rule is not complied with, namely subparagraph N, which is the effective date of the rule, I don't think you can go back then and say that, oh, now subparagraph N only applies just because it was only designed to apply to the clerk's office. So you have a position that your client never had any obligation to report a change in his employment status? Under the terms of this underlying case, yes. The July 9, 1990 order did not require him to report the terms of his employment. It specifically states that all supplemental orders were quashed and no other order was entered subsequent to that date. In other words, either party could have filed a motion to modify, however, none was filed in this case. And additionally, I would note that the record is silent on whether or not my client did in fact obtain employment, whether that was reported to the appellant in this case or otherwise. Do you think it was the intent of the parties that back when a child was 5 years old that child support was abated forever? And wouldn't that be somewhat against Illinois' public policy towards the obligation to support one's child? I believe the order was to abate child support based on his layoff of employment until further order of court. Now, no further order of court was entered, and I don't know how long his layoff of employment may or may not have gone. It could have went 13 years, which could have been if he was laid off during that time period to not have support accrued. But you're suggesting it's not his obligation to notify the court under any circumstance, statutory or otherwise? I don't think there is a statutory basis that he has an affirmative obligation to notify the court or the clerk or Ms. Adams of his employment that he was aware of at the time this order was entered. But whether he was aware of it or not, your position is still he had no obligation? He had no notice that he had the obligation to do so. Does he have an obligation or does he not have an obligation? No. And you also argue that since this was a judicially approved order, that that apparently carries some more weight and that the court's approval indicates that it at least thought that this arrangement abating child support was in the best interest of the child, and you cite the Now case in Ray Now. But that case is really distinguishable from the facts of this case before this Court, isn't it? In fact, I mean, in Now, the father did share custodial duties with the mother. Here, there was no sharing of duties at all. So the facts really are not the same in these two cases. I agree the facts aren't the same, but the principle that a court-approved order could be relied upon by the parties was, I guess, the principle of law I was citing that case for. Well, but you're also – I mean, you also say in your brief that the trial court's approval established that the arrangement of abating child support was in the best interest of the child. Now, it's a C-site that you see in Ray Marriage of Now, but I guess my point is still that it's a different situation, and I think it goes back to Justice Jorgenson's questions about the obligations of a parent vis-à-vis one's child. Well, I think at the time the order was entered, it indicated that the court was advised in the premises, and I think that that language in reading Now, it's my interpretation of that, suggested the court approved that underlying order. Mr. Adams, by the quashing of the supplemental orders, was not under affirmative obligation to report his employment, and, again, I would note the record styles on this issue. It seems like the judge took the position that – I'm going to use the word unfair – to, at this point in time, to enforce child support. The child is not in court asking for enforcement of the child's support, which he has the right to do. Nobody knows anything that happened within that 13-year period regarding who paid support and who didn't pay support. As a matter of fact, some testimony in the record indicates that, number one, there was an agreement between the husband and wife that if the husband did not have contact with the child, he did not pay support. He apparently made no attempt to see the child, so he fulfilled his part of that bargain. And I assume the wife could have fulfilled her part of the bargain by not filing an order to get support for the agreement. We know that those type of orders are not enforceable, but I think there is some case law that recognizes equitably they're not going to go back and award child support when the husband has given up some valuable rights. They seem to adopt an equitable principle. Are you familiar with that type of analysis? Yes. I guess I'm not certain I understand. Is there what you – Well, correct me if I'm wrong. Isn't there testimony in the record that the husband testified that he and the wife agreed that he would give up his visitation rights if she would waive collection of child support in the future, that for 13 years he has not had any contact with the children? The wife says that statement is not true. And I don't think the court made any determination in credibility relative to that statement. I agree, and that was his testimony at the time. I don't know that the court even needs to consider that testimony, because I think before we consider that testimony, we have to look at the terms of the order. And I think the terms of the order are clear and unambiguous. And as a result, his testimony doesn't even come into play, because the principles of construction require us to look at four corners of the document, at which point, if we're looking at the document, it says child support is abated until further order of court. What's your position regarding the public policy argument against the order that was the abatement order? Which public policy? Which public policy are you referring to? Public policy of the state of Illinois. That prohibits abatement orders? No, that protects the rights of children and the obligation of parents to support children. I think this order was entered consistent with 510, which would allow the court to modify, terminate, or abate support until a further order of court. And since no motion to modify was filed on either side, I think that this order is consistent with the public policy of the state of Illinois. Doesn't another section of the act require your client to notify the court? I have to apologize. I'm not familiar with which section you're referring to. Section 505. Shall require a provision requiring the obligor to notify the court within seven days of any new employer? If that were the case, and I have to apologize because I'm just not prepared to address that today. Fair enough. If that were the case, presumably that would have been contained within the order requiring my client to approve. So if the lawyer drafted an order back in 1979 left out a little phrase, that means that your client did not have that obligation and was taken out of the law that applies to everybody else? I think fundamental fairness would require them to have notice of that if they were going to be applying it. I think that the order in this case was entered consistent with the terms, and, in effect, by applying an obligation to that effect retroactively to July 9, 1990, we're then going to be setting support. It would be unfair to set support going back that far. Okay. Thank you. I guess, counsel, bottom line, should we decide this based on the application of the provisions of the statute or in equity? I think the court can decide it either way. Based on the statute, if Rule 296 does not apply in King County, there's no possible way an arrearage could have continued to accrue under that rule. The only motion that was filed was under 296. So if 296 does not apply, no relief could have been granted, and the court's decision was proper. Similarly, if 296 does apply, I think the court can decide this under equity because my client didn't have notice that it was going to apply to him specifically. Ms. Adams waited in excess of 18 years to pursue this matter, and he relied on a court-approved order. The only other point I would raise is that Supreme Court Rule 296 does not overrule Coons. It indicates it's contrary to Coons. And I think if the intent of the court were to expressly overrule the Coons case, which was previously decided by this court,  it would have stated specifically in the rule or the committee comments that it was overruling Coons, and it wouldn't have been an optional provision, namely subparagraph N, for a county to opt in. And then in closing, the appellant filed a motion, as I indicated at the beginning, relying solely on Supreme Court Rule 296. Rule 296 requires a county to opt in to have the terms of the rule apply. There's a presumption that the Supreme Court rules will apply as drafted. King County has not opted in to have 296 apply. Therefore, 296 does not apply. And as a result, I think we need to give abate its ordinary meaning and the July 9, 19 order reduce support to zero. No support approved, no support is due, and the trial court should be affirmed. Chair, no further questions? Do you have any response to the plaintiff's request that if we do, arrive at a decision that she's entitled to flex-back support, that the amount of support be based on the $51 per month that she was receiving back in 1988? I believe that would be the application of the way Rule 296 is drafted, which would be, if you were going to say 296 is applied, she's entitled to this money, it would be calculated based on those terms. And do we have to know anything about the employment of the father during that period of time if he was unemployed for three years and still has to pay the $51? Under Supreme Court Rule 296, support would continue to accrue as previously set. And as a result, I believe, based on a strict application of 296, the support would be relief requested by the appellant. But I think fundamental fairness would require my client to have some notice that that was going to apply in King County, and I don't think that that's happened in this particular instance. Thank you, counsel. Mrs. Janssen? Thank you, Your Honor. I would just like to briefly follow up on a few issues that were raised during the counterargument, the first of which, I think it's important to note, that that 1990 order that abated support says, until further order of the court. And I think that if there's any inference to be drawn from that order, it's not necessarily that Cindy Adams had the ability to support the child on her own. It's that there was going to be a further order of this court, of that court, relating to child support for this child. And that there was some obligation on someone to do something, and I think Justice Jorgensen pointed out Section 505 provides an obligation for a payor noncustodial parent to notify of the change in employment status. I think it's also contained in the Non-Support of Children Act, which I've cited on page 18 of 21 of my brief in relation to a case that had some fairly similar facts and was in fairly similar timeframes. So I think that even if I'm not sure what the effective date of any amendments to 505, I have not done that research, but I think the Non-Support of Children Act, which was in place at the time, required that very same requirement that the payor spouse provide information relating to unemployment. So the way that the policies are drafted, the obligation regarding employment, the obligation regarding the payment of support, unless it's an increase, always falls on the obligor. So to the extent that he wanted this abatement to continue under 296F for more than six months, David Adams would have the obligation to come back and ask the court to continue it. That's why we have argued that it should begin to accrue again six months after that order was entered at the $51 per week. And you're saying nothing was needed to let it start to accrue, no petition by the obligor needed to be filed with regard to abatement, but accrual in the first place. You're saying only at the six-month interval the obligor should have come in, not at the beginning to make this operative? Correct. Pursuant to Supreme Court Rule 296F, if an order is entered abating support, that abatement is temporary for a period of six months, and it reinstates automatically after six months, unless the obligor, the paying spouse, comes back in and asks it to extend an additional six months. Then we'd have to accept the Rule 296F to follow your theory. On this issue, yes. Now, to the extent that... You didn't argue 505 in your brief. I don't believe I cited 505. And to be honest with you, I'm not sure why. It may have been that I wasn't sure about the timing of the enactment of that language in the legislative history. I did cite the Non-Supportive Children Act, which is a separate act but relates to the same matter, which was in place at that time. So I'm not sure why 505 wasn't cited. I'd have to go back and do some additional research on that. The 505 was based on the Supreme Court case of Williams that first outlined the process. The process for? Reinstating child support that had been abated for one reason or another. Okay. I do recall reading the Williams case, but I'm not familiar with its contents right now. I apologize. I think that I wanted to address the issue relating to this outside agreement regarding visitation-slash-child support. I don't think the court should consider that agreement at all. And the reason why is, first of all, my client denied its existence. Mr. Adams said it existed. I don't believe there was actually ever any testimony in the record, if my recollection serves me, as to whether or not he exercised visitation. I think it simply says that they had this agreement that he wouldn't, and he wouldn't pay child support. I don't think it says whether or not he did. And the court never ruled on that. No, they never ruled on that point. It presumably never reached that argument. And I don't think that the 1990 court that heard the abatement would have been ruling on that issue either. It is not contained. There is nothing in that 1990 order that says that David Adams won't have visitation and Cindy Adams won't get support. And the reason why it's not in there is because the court never would have signed that order because it was a violation of public policy in 1990 just as much as it is in 2009. So if that language had been in there, the court never would have signed it. So I don't think that the court should infer that that was the intent of the parties, especially when one party has denied that. Go ahead. I'm sorry. I was just going to say that I think that it's . . . Would it make any difference if the mother didn't support the child? Do we know that the mother supported the child for the 13 years? We do. I mean, I have personal knowledge that she . . . Is there anything in the record? There's nothing in the record specifically other than I'm not sure what the allegations . . . I'd have to go back and review her petition to see if it indicates whether or not the child lived with her during that time. I don't think there's a specific allegation in the record. But I don't think there was a defense raised on that basis either, which I think would likely be an equitable defense that if, say, for instance, the child became a foster child in a ward of the state, I would suspect that Mr. Adams might have raised that as a defense. Do you believe that both parents have an obligation to support the child? Absolutely. And if the mother didn't support the child, why would she be entitled to . . . Had it had the ability, and the husband didn't, and we don't know whether he did or didn't based on the facts, why would we grant him $34,000 or whatever round number it is? The reason why is because there is a court order that said she was entitled to support. And that court order was temporarily abated, and it makes it very clear in the order that it was based on the fact that Mr. Adams had temporarily been laid off from work. And I think at that point, the correct inference to be made is that she must have been entitled to that $51 a week in support back in 1990, and that absent any court orders, it was supposed to be temporary. The intent was for it to be temporary. And I think that if you're going to make an equitable argument, if the balance of the equities here lies anywhere, it is not with Mr. Adams' argument that because he didn't know that the Supreme Court 296F was in place, that he shouldn't have to pay child support for 13 years. The balance of the equities should lie with a custodial parent who presumably supported a child by herself for 13 years without contribution from a biological father who was temporarily laid off from work. Why would we presume she raised the child for the past 13 years? Why didn't the grandmother? Well, I think that if those facts were in evidence that she didn't raise the child, I guess my logical presumption would be that a custodial parent who is now asking for support raised the child. You're correct. There are no facts that say that. But I don't really think that this Court should draw the negative inference that she didn't. She has an obligation to raise the child and pay support to raise that child. The question is, does the husband have the ability and the obligation? If he doesn't have the ability, he doesn't have the obligation. I would respectfully disagree with you that if he doesn't have an ability, he doesn't have an obligation because I think the courts How are you going to get support out of a child? You have orders for employment and the court can keep him under order for employment  I didn't know he was employed. I'm sorry? I didn't know he was employed. What I'm insinuating is that if he hadn't been employed, he would have been forced to seek employment because that's what the court system does. It forces a custodial parent to go out and find employment to support a child because the policy is that strong that the child is entitled to support. It's not the custodial parent. It's the child. So by saying that the custodial parent may not be entitled to it now, it was actually reimbursing her for the support she gave that child during that 13-year period. And that's the equitable relief there. It's not necessarily the equity of saying, well, Mr. Adams shouldn't be able to pay it. There are plenty of case law that indicates that the fact that the payment is made in a lump sum versus over a period of time is not inequitable. You're dumping an awful lot on the husband when you're not putting any obligation on the wife. The order says, for purposes of changing support, abatement, subject to a court order. And nobody went in to get a court order. Correct. My argument is that that obligation pursuant to either 505 or the Non-Supported Children Act was on the husband to go in and provide information relating to his employment. All right, and I have one brief question. You devote part of your brief to arguing that this order was voidable. Why do you say it's voidable and why was it not void if it was contrary to the public policy of the state of Illinois? As the appellant pointed out in his brief, I think that the distinction may lie in the interpretation of jurisdictional issues. Perhaps the orders are considered void if they're entered without jurisdiction and voidable if they're against public policy. However, I don't have the case law sites in front of me, but there are cases out there that have indicated that orders are void as being against public policy. So I would argue that to the extent that there is a drastic public policy violation, I can't think of a better word for it, that this order could be void because of the fact that it is clearly entered outside of what the authority of the statutes was intended to provide. To be honest, I'm not sure if that's the case here, especially with the enforcement provision. So that's why I argued that it was voidable based on the fact that he didn't follow other statutes, which would have required him to provide information regarding his employment. So if Supreme Court Rule 296F doesn't apply, it should not allow him to escape his liability to pay just because he didn't bother to tell anyone that he was reemployed. That's the argument that I'm making. And the third district court in the newer case of In re of the marriage of Reimer makes that point very clearly and even indicates that that's an absurd result. You can tell by just reading the case that they felt that what they were doing was not really what was proper, but they felt they needed to follow Supreme Court Rule 296N that said that the rule didn't apply. I disagree. And I disagree because I think that the committee notes make it clear that it was intended to apply and that by specifically stating that the Coons court held they didn't have authority, and voila, here is the Supreme Court rule, I think they were intending to give that court the authority to say, OK, now everybody has the authority. Let's go with it. Why subsection N doesn't say that it's not applicable to subsection F? I don't know. But I think the use of the words experimental procedures in subsection N make it clear that it's intended to apply to the rest of the rule, not necessarily to subsection F, which has no experimental procedures, and it's simply a pronouncement of authority for discretion for the judges. Anything further? Thank you. Thank you very much, counsel. The court will take the matter under advisement.